Sime **MILETIC**, Plaintiff,

v.

**HOLM & WONSILD**, Defendant.

**REDERI A/S MYREN**, Defendant and Third-Party Plaintiff,

v.

**CUNARD STEAMSHIP CO.**, Ltd., Third-Party Defendant.

No. 67 Civ. 215.

United States District Court
S. D. New York.
Dec. 13, 1968.

Haight, Gardner, Poor & Havens, New York City, for defendant and third-party plaintiff, W. P. Kain, Jr., and Thomas F. Molanphy, New York City, of counsel.

Lord, Day & Lord, New York City, for third-party defendant, William J.

Brennan, and Roger C. Ravel, New York City, of counsel.

MANSFIELD, District Judge.

In this suit by a longshoreman seeking damages from a shipowner (Rederi) for injuries suffered while discharging cargo from the ship in the Port of New York and charging negligence and unseaworthiness, Rederi has impleaded Cunard, the time charterer of the ship, as a third-party defendant. At the time of the accident, Cunard was acting as its own stevedore in unloading the cargo. The third-party complaint asserts two causes of action seeking indemnity from Cunard, one for breach of the charter party contract, and the second for breach of its implied warranty to provide workmanlike service in its capacity as stevedore. See Ryan Stevedoring Co. v. Pan-Atlantic Steamship Co., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Cunard, the third-party defendant, now moves pursuant to the Federal Arbitration Act, Title 9 U.S.C. § 3, to stay the shipowner's third-party suit, contending that both claims asserted against it are subject to arbitration under the arbitration clause of the charter party contract. For the reasons stated below, the motion is granted.

The charter party contract, which was entered into on March 8, 1965 in London, England, provided that "Charterers are to load, stow, trim and discharge the cargo at their expense under the supervision of the Captain." It also contained the following broad arbitration clause, sometimes referred to as the "Produce Exchange Form" :

> "17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at London, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men."

The charter party contract was in full force and effect at the time of the accident, and its enforceability here is governed by federal law, including the Federal Arbitration Act. See Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959). Rederi, however, while conceding that its claim against Cunard for breach of the charter party is referable to arbitration, contends that its separately asserted claim for breach of implied warranty of workmanlike service is not arbitrable under their agreement.

Title 9 U.S.C. § 3 authorizes the court to stay any suit or proceeding upon being satisfied that the issue is "referable to arbitration" and would govern a dispute falling within the terms of an arbitration clause of a charter party. Import Export Steel Corp. v. Mississippi Valley Barge Co., 351 F.2d 503, 506 (2d Cir. 1965). The burden is upon the party seeking a stay to satisfy the court that a matter is referable to arbitration. Nederlandse Erts-Tankersmaatschappij N. V. v. Isbrandtsen Co., 339 F.2d 440 (2d Cir. 1964).

The essential question to be resolved is whether the words "any dispute * * * between Owners and the Charterers" in the arbitration clause encompasses the claim based upon breach of an implied warranty. The charter, although contemplating that Cunard would unload the vessel or employ a stevedore to do so, did not impose upon Cunard any warranty of the type frequently found in stevedoring contracts, to the effect that the stevedore holds the owner harmless against claims or damage arising out of the conduct of stevedoring operations. See, for example, D/S Ove Skou v. Hebert, 365 F.2d 341, 345 n. 7 (5th Cir. 1966). Paragraph 8 of the charter, which states that the "Charterers are to load, stow, trim and discharge the cargo at their expense * * * *", was apparently intended to establish responsibility for the cost or expense of unloading rather than to obli-

gate Cunard to be responsible for unloading or stevedoring functions (whether or not performed by it) or to create a stevedore's warranty of workmanlike performance. Any such warranty would, therefore, arise out of Cunard's performance of stevedoring services rather than out of the terms of the time charter agreement. McNamara v. Weichsel Dampschiffahrts AG Kiel, Germany, 293 F.2d 900 (2d Cir. 1961); Mondella v. S. S. Elie V, 223 F.Supp. 390 (S.D.N.Y.1963); Drago v. A/S Inger, D.C.N.Y., 194 F.Supp. 398, affd., 305 F.2d 139 (2d Cir. 1963).

The difference between the two claims asserted by Rederi against Cunard is illustrated by what would happen if the accident had occurred during the course of unloading of the ship by an independent stevedoring concern employed by Cunard. In such event Rederi would have no warranty claim against Cunard, and it could assert such a claim only against the independent stevedore. Crumady v. J. H. Fisser, 358 U.S. 423, 428, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); DeGioia v. United States Lines, 304 F.2d 421 (2d Cir. 1962). In the present case, therefore, its warranty claim against Cunard arises solely out of the coincidence that Cunard, the time charterer, undertook in a dual capacity to perform the stevedoring services rather than because Cunard was under any obligation, express or implied, to do so under the charter agreement.

■ The fact that the alleged warranty may not have arisen out of the terms of the charter party does not mean that it is not referable to arbitration under the charter party's arbitration clause, which provided for arbitration of "any dispute" between the parties without reference to whether it arose under the charter. Robinson v. Bache & Co., 227 F.Supp. 456 (S.D.N.Y. 1964). If the parties had wished to restrict the applicability of the arbitration clause to claims based on or arising out of the charter party agreement, there was available to them the well-known Baltime Form, which limits arbitration

to claims "arising under the charter". Instead they extended their arbitration agreement to "any dispute" between them, which literally and by its plain meaning encompasses a dispute between them based on alleged breach of warranty arising out of the maritime voyage which was the subject of the charter. The situation here is on all fours with that before the court in In re Canadian Gulf Line, 98 F.2d 711 (2d Cir. 1938), where the court held that the identical arbitration clause was not limited to arbitration of claims arising under the charter party but extended to "any disputes arising out of the maritime venture initiated by the charter party".

■ In addition to the broad scope and plain meaning of the arbitration agreement ("any dispute"), several considerations dictate that the arbitration clause be construed to encompass the warranty claim. In the first place, although that claim arose out of Cunard's dual capacity rather than out of the terms of the charter, all parties were aware that stevedoring operations would be required during the course of the maritime venture for the discharge of the cargo in New York, and that Cunard might act as its own stevedore may well have been contemplated, since Cunard previously had acted in such a dual capacity in discharge of cargo from other ships chartered by it from Rederi which gave rise to a similar claim in this Court. Penoro v. Rederi A/B Disa, 64 Ad. 478 (S.D.N.Y. July 5, 1966, unreported) (decision of Murphy, J. raising same issue as to an October 1963 accident while Cunard was unloading in New York), appeal dismissed for lack of jurisdiction, 376 F.2d 125 (2d Cir. 1967), cert. denied, Rederi A/B Disa v. Cunard S. S. Co., 389 U.S. 852, 88 S.Ct. 78, 19 L.Ed.2d 122 (1967). Of equal importance is the oft-repeated affirmance by our appellate courts of an "overriding federal policy favoring arbitration", Carcich v. Rederi A/S Nordi, 389 F.2d 692, 696 (2d Cir. 1968), and that any doubt as to the arbitrability of an issue should be resolved in favor of arbi-

tration. Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382 (2d Cir. 1961); Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra.

"[O]ur courts and the English courts have held that an arbitration clause is to be given the broadest possible interpretation as to subject matter, In re Pahlberg Petition, 2 Cir., 131 F.2d 968, and Heyman v. Darwins, Ltd. (1942) App.Cas. 356." (Fox, et al. v. The Giuseppe Mazzini, et al., 110 F. Supp. 212 at 214 (E.D.N.Y.1953), interpreting the identical arbitration clause.)

A strict construction of the arbitration clause here would work unfortunate consequences. Although the two causes of action (breach of charter and warranty) are separate, they arise essentially out of the same occurrences. Unless the claims are resolved by one tribunal, the parties will be put to the expense and duplication occasioned by arbitration of one claim before one tribunal and trial of the other in this Court. Such a consequence is to be avoided if possible. Accordingly, in keeping with our policy in favor of arbitration, the clause here is to be construed as encompassing both claims as disputes between the parties arising out of the single maritime venture or transaction that was initiated by the charter party. In re Canadian Gulf Line, 98 F.2d 711 (2d Cir. 1938).

Since it is not anticipated that arbitration of the third-party claims would be undertaken until disposition of the plaintiff's claims against Rederi, Rederi faces the risk that upon arbitration Cunard might change its position and contend before the arbitration board that the breach of warranty claim is not arbitrable under the charter party, in which event the scope of the arbitration agreement would be for the arbitrators to decide. Butler Products Co. v. Unistrut Corp., 367 F.2d 733 (7th Cir. 1966); see Penoro v. Rederi A/B Disa, 376 F.2d 125, 128 n. 6 (2d Cir. 1967). In order to guard against such a possibility the Court grants this motion on condition that Cunard agrees not to contest the arbitrability of the warranty claim under the terms of the charter party agreement.

So ordered.